```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,

        Plaintiff,
                                        Criminal Action
     vs.
                                        No. 02-27 E
ALEXANDER PADILLA,

        Defendant.
_____



     Transcript of proceedings on May 17, 2004,
United States District Court, Erie, Pennsylvania,
before Maurice B. Cohill, Jr., District Judge




APPEARANCES:

For the Government:          Marshall J. Piccinini, Esq.


For the Defendant:           Simon T. Steckel, Esq.





Court Reporter:              Richard T. Ford, RMR, CRR
                             619 U.S. Courthouse
                             Pittsburgh, PA  15219
                             (412) 261-0802




Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription
```

```
 1                (Proceedings held in open court; May 17, 2004).
 2                (In chambers portion not transcribed).
 3              THE COURT:  This is the time set for the sentencing
 4   of Alexander Padilla.  I had a conference -- the Government
 5   has filed a 5K motion for the Court to consider a downward
 6   departure from what the guidelines call for based on
 7   Mr. Padilla's cooperation with the Government, and we had a
 8   conference in chambers at which we reviewed his cooperation
 9   and we directed that that portion of this hearing be placed
10   under seal.
11              Neither the Government nor the Defendant have
12   raised any legal or factual objections to the presentence
13   report.  We note that Mr. Padilla and his attorney have signed
14   a notice indicating they've received and reviewed the report.
15   We will make that part of the record under seal.  If an appeal
16   should be taken, counsel, of course, will be permitted access
17   to that report.
18              There's been no information withheld from the
19   Defendant which was given to the Court.
20              Since no legal or factual objections have been
21   filed by either party, we find that the appropriate offense
22   level here is 29 and the criminal history category is Roman
23   numeral two.  Thus, the applicable guideline range is 120 to
24   121.
25              MR. PICCININI:  Actually, Your Honor, it is 97 to
```

```
 1  121, but there is a ten-year minimum.
 2          THE COURT:  120 to 121 months imprisonment,
 3  supervised release of five years, and a fine in the range of
 4  15,000 to $4 million.
 5          At this time, Mr. Steckel, is there anything you
 6  wish to say or introduce any testimony in behalf of your
 7  client?
 8          MR. STECKEL:  Yes, Your Honor.  Your Honor,
 9  initially let me just state --
10          THE COURT:  Mr. Padilla, you can sit down.
11          MR. STECKEL:  I have filed no objections to the
12  presentence report.  I would just point out, I spoke to
13  Mr. Piccinini in advance of this hearing.  There is one DUI
14  arrest which is not contained within the presentence report
15  pertaining to Mr. Padilla.  However, that will not change
16  Mr. Piccinini's recommendation with regard to the Defendant's
17  sentence.
18          THE COURT:  Thank you.
19          MR. STECKEL:  Your Honor, chronologically, when
20  Mr. Padilla was arrested in September of 2002, I immediately
21  reached out at my client's request to Mr. Piccinini with
22  regard to what my client's intentions at this point were going
23  to be with regard to this case.  The decisions which he made
24  very, very early on in this case have certainly followed
25  through to the sentencing as we stand here today.
```

 1            At no point have we sought the Court's time with
 2    regard to hearings on any motions, defensive pleadings, things
 3    of that nature.  Mr. Padilla made a conscious decision very,
 4    very early on in this case he was going to cooperate fully
 5    with the Government, and he has done so, and the Court is well
 6    aware of what that cooperation has entailed.
 7            I think it's important for the Court to consider
 8    this case now as it's pending in excess of a year, close to
 9    two years, and during that period of time Mr. Padilla's
10    intentions, his direction, his focus have been specific and
11    deliberate with regard to assisting the Government in any way
12    he possibly can.
13            Mr. Padilla during the course of this case, in July
14    of last year -- Mr. Padilla has been in the motorcycle
15    business, he owns a shop in which they repair and customize
16    motorcycles.  In July of 2003, he was test driving a
17    motorcycle not even a block from his shop, and as he was
18    driving down the street a block from his shop, he was --
19    unfortunately a car cut in front of him to turn into a
20    driveway and the resulting crash has seriously altered
21    Mr. Padilla's life.  I think the Court is aware of this
22    because at one point we had to continue the sentencing in this
23    matter going back into last year and I included a copy of a
24    report from a physician who was treating him at the time.
25            Basically Mr. Padilla hit this car, which was cited

1  for making a left turn in front of him while he was test
2  driving the vehicle, hit the motorcycle so hard the motorcycle
3  actually was severed into two pieces.  Traffic homicide was
4  called to the scene and they did not expect Mr. Padilla to
5  survive the accident.  He was in intensive care for awhile,
6  went through blood transfusions, operations, et cetera.
7           Although he stands before you today for sentencing,
8  the most significant injury which he will carry with him the
9  rest of his life is the ulnar nerve, which is a nerve that
10 basically plays a major part in the dexterity and strength of
11 one's arm, and his dominant arm, which was his right arm, was
12 severed.  Although surgically repaired, Mr. Padilla has never
13 been able to regain the strength and dexterity in the arm.
14          So he went from the point where he was actually
15 running, working, and actively working on motorcycles in the
16 shop where now he is nothing more than custodian of the shop
17 because he lost the ability of his dominant arm.
18          That all took place during the course of this case
19 and I ask the Court to consider that in regard to imposing
20 sentence, specifically with regard to the fine.  I know there
21 was a possibility the Court could impose a fine; I would ask
22 the Court not to consider imposing a fine against Mr. Padilla
23 because when he is ultimately released from whatever period of
24 incarceration the Court would impose on him, the ability to
25 earn a living is significantly diminished.

```
 1              With regard to the guidelines, Your Honor, the
 2   guidelines in this case at this point recommend, prior to the
 3   Court's consideration of a 5K, the recommended range right now
 4   is 93 to 121 months.  There was an artificial floor as it
 5   stands right now of 120 months, but that exists only until the
 6   Government files the 5K.  Once the Government files a 5K, the
 7   Court then becomes free to sentence within any range the Court
 8   deems proper, and I believe based upon that scenario, with the
 9   filing of the 5K, there no longer exists a 120-month mandatory
10   minimum in this case.
11              THE COURT:  That's correct.
12              MR. STECKEL:  So what I would ask the Court to
13   consider is I would ask the Court to consider sentencing
14   Mr. Padilla at a 50 percent reduction of the low end of the
15   guideline range as it exists in this case, which would be 97.
16   I would ask the Court, based upon the information the Court
17   has taken in chambers, consider sentencing Mr. Padilla to a
18   sentence of approximately 48 months, which give or take is
19   approximately one half of the low end of the guidelines as it
20   exists in this case.
21              I had spoken to Mr. Piccinini about my
22   recommendation in advance of this today.  I know he has
23   advised me that the Government's position is not to make a
24   specific sentencing recommendation.  However, I do not believe
25   he opposes me in my recommendation to the Court.
```

```
 1            Mr. Padilla's wife is here.  She's traveled from
 2   Florida to be present at her husband's sentence.
 3            What I would ask the Court to do is to consider
 4   everything the Court has heard, sentence Mr. Padilla to a
 5   sentence of approximately 48 months of incarceration.  I would
 6   ask the Court not to impose a fine.  I would ask the Court to
 7   recommend that he serve his time in a facility somewhere
 8   located -- a camp facility located in the state of Florida.
 9   And, finally, I would ask the Court to set a voluntary
10   surrender date of approximately 90 days from today.  The
11   injuries which he has suffered as a result of the accident,
12   there is ongoing litigation with regard to that.  Hopefully it
13   will be resolved within the next 30 to 60 days, and I would
14   ask the Court to give Mr. Padilla a 90-day surrender date so
15   we can tie up those loose ends and Mr. Padilla can tie up
16   whatever loose ends there are regarding that case and
17   following that report to the Bureau of Prisons.
18            THE COURT:  Mr. Padilla, anything else you wish to
19   say on your own behalf?
20            THE DEFENDANT:  Yes, I would like to apologize to
21   the Courts and ask that the Court please be merciful.
22            THE COURT:  Thank you.  Mr. Piccinini, does the
23   Government have anything?
24            MR. PICCININI:  No, Your Honor, I rely on the
25   testimony we provided to you in chambers.  That's all I have.
```

```
 1            THE COURT:  Thank you.  Well, I gather from what I
 2   have read here and I guess I should say maybe what I infer
 3   from the presentence investigation is that Mr. Padilla was a
 4   pretty -- was pretty high up in the chain of drug distribution
 5   in Western Pennsylvania.  Certainly these people with whom he
 6   was involved brought a lot of drugs into Pennsylvania.
 7   Mr. Hartman said that Mr. Padilla was his supplier.
 8            But I am also now going to consider the report that
 9   I received in chambers with respect to Mr. Padilla's
10   cooperation, and that cooperation was extensive.  I am going
11   to take that into consideration as well.
12            Mr. Steckel, is there any reason sentence should
13   not be imposed at this time?
14            MR. STECKEL:  No, sir, Your Honor, although I would
15   like to point out with regard to the Court's comments, the
16   individual whom we discussed in chambers, the initial of the
17   various, that was the individual within the chain who would
18   have been in a position directly above Mr. Padilla, making him
19   basically nothing more than a middleman within that chain.
20            THE COURT:  Thank you.
21            MR. STECKEL:  Thank you.
22            THE COURT:  Mr. Padilla, is there any reason that
23   sentence should not be imposed at this time?
24            THE DEFENDANT:  No, Your Honor.
25            THE COURT:  Mr. Piccinini?
```

1        MR. PICCININI:  No, Your Honor.

2        THE COURT:  Pursuant to the Sentencing Reform Act
3   of 1984, it is the judgment of the Court that the Defendant,
4   Alexander Padilla, is hereby committed to the custody of the
5   Bureau of Prisons to be imprisoned for a term of 48 months.

6        The Defendant shall make -- the Defendant shall
7   notify -- well, let me step back a minute.

8        I am not going to make a 90-day -- I am going to
9   let him self-report.

10       MR. STECKEL:  Thank you, Your Honor.

11       THE COURT:  I will recommend he be placed somewhere
12  in Florida.  Of course, that's only a recommendation from me.
13  His final placement is up to the Bureau of Prisons.

14       I am not going to grant the 90-day thing.  I think
15  it is usually about two months anyway, these dates, isn't it?

16       MR. STECKEL:  I think it is about two months, yes.

17       THE COURT:  So I think that should be enough.  I am
18  not going to impose on the Marshal Service a time for him
19  to -- or I guess I should say the Bureau of Prisons for a time
20  by which he should report.  They have got enough problems and
21  we will let them decide when he should report.

22       Upon release from imprisonment, the Defendant shall
23  be placed on supervised release for a term of five years.

24       Within 72 hours of release from the custody of the
25  Bureau of Prisons, the Defendant shall report to the Probation

```
 1  Office in the district to which he is released.
 2          While on supervised release the Defendant shall not
 3  commit another federal, state, or local crime; shall comply
 4  with the standard conditions that have been adopted by this
 5  Court; shall comply with the following additional conditions:
 6          The Defendant shall not possess a firearm or
 7  destructive device.
 8          The Defendant shall not illegally possess a
 9  controlled substance.
10          The Defendant shall participate in a program of
11  testing and, if necessary, treatment for substance abuse as
12  directed by the probation officer until such time as the
13  Defendant is released from the program by the probation
14  officer.
15          Further, the Defendant shall be required to
16  contribute to the costs of services for any such treatment in
17  an amount determined reasonable by the probation officer, but
18  not to exceed the actual cost.
19          The Defendant shall submit to one drug urinalysis
20  within 15 days after being placed on supervision and at least
21  two periodic tests thereafter.
22          The Defendant shall pay any -- well, it is further
23  ordered that Defendant shall pay to the United States a
24  special assessment of $100, which shall be paid to the United
25  States District Court Clerk forthwith in the event it has not
```

1  already been paid.
2         The Court finds that due to the Defendant's
3  financial obligations to his children it would be unjust to
4  impose a fine at this time, and we will waive imposition of a
5  fine.  We feel that a sentence of 48 months imprisonment at
6  this time followed by a term of five years supervised release
7  does adequately address the sentencing objectives of
8  individual and general deterrence and punishment, as well as
9  protection of the community.
10        Mr. Padilla, you have a right to appeal.  You are
11 entitled to a lawyer at every stage of the proceedings.  If
12 you cannot afford an attorney, one will be provided for you
13 without charge.
14        Are there any counts to be dismissed here?
15        MR. PICCININI:  There are not, Your Honor.
16        THE COURT:  Okay.  Court's adjourned.
17        MR. STECKEL:  Could I just have one request to the
18 Court.  With regard to the J&C, could the Court recommend that
19 Mr. Padilla participate in a drug program while in the Bureau
20 of Prisons.  I think there was some history of marijuana abuse
21 and he has never been in a drug program before.
22        THE COURT:  I will recommend that.  I think those
23 programs are so filled that unless it's a real, real bad
24 addict, the chances are slim he will get in.  But I will make
25 that recommendation.

1       MR. STECKEL: I understand. Thank you, Your Honor.
2     (Record closed).
3
4
5
6                *       *       *       *       *
7
8
9
10
11                    C E R T I F I C A T E
12        I, Richard T. Ford, certify that the foregoing
13 is a correct transcript from the record of proceedings in the
14 above-titled matter.
15 S/Richard T. Ford    _____
16
17
18
19
20
21
22
23
24
25